9 F.3d 112
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Shamshair ALI, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 93-1035.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 17, 1993.
Decided Nov. 2, 1993.
 
 1
 Before POSNER, Chief Judge, CUMMINGS, Circuit Judge, and ZAGEL, District Judge.*
 
 ORDER
 
 2
 Petitioner is a citizen of Pakistan. He entered the United States in June 1985 as a non-immigrant visitor for pleasure and was authorized to remain here until December 9, 1985. He failed to depart and the Immigration and Naturalization Service (INS) served him with an Order To Show Cause on September 9, 1986, charging him with deportability as an overstay under Sec. 241(a)(2) of the Immigration and Nationality Act (now 8 U.S.C. Sec. 1251(a)(1)(B)).
 
 
 3
 Petitioner conceded deportability at a hearing in September 1986. On May 29, and on August 21, 1987, an Immigration Judge heard petitioner's evidence in support of his asylum claim. Thereafter the Immigration Judge found him deportable, denied his request for asylum and withholding of deportation, and granted him voluntary departure. Petitioner appealed to the Board of Immigration Appeals, which affirmed the decision of the Immigration Judge. He then filed this petition for review. We affirm.
 
 
 4
 In his application for asylum, petitioner stated that he became a member of the Pakistan People's Party (PPP) in Faisalabad, Pakistan, while he was still in high school. He would meet with colleagues every fortnight to organize resistance to military law by General Zia. He claimed he was arrested by military police in 1979 and detained for fifteen days while being questioned daily about his involvement in anti-government activities. After 1980, petitioner lessened his participation in the PPP. Petitioner left Pakistan for the United States in June 1985.
 
 
 5
 After receiving petitioner's application for asylum in January 1987, the Executive Office of Immigration Review asked the State Department for an advisory opinion. The following month the State Department replied that petitioner had not established a well-founded fear of persecution.
 
 
 6
 In May 1987, petitioner appeared at an evidentiary hearing at which he presented an affidavit to the Immigration Judge stating that he had been arrested and detained six times in Pakistan. He did not allege any mistreatment. He said he departed from Pakistan because the local PPP president informed him the police were likely to bring charges against him. In addition to the affidavit, petitioner testified that he had been arrested numerous times during public demonstrations by the PPP in his home city. He said he was detained 40 or 50 times and beaten on almost every occasion, and that he was not released until he paid a fine or bribe. In particular, petitioner related that his beating at the hands of the police during a four-day detention resulted in ten days of hospitalization.
 
 
 7
 None of the events outlined in the affidavit or in petitioner's testimony were mentioned in his original asylum application, and many of them purportedly occurred after petitioner's 1980 curtailment of his PPP activities. Government counsel noted that the petitioner mentioned only one arrest, instead of 40 or 50, in his written application for asylum. Petitioner responded that he was arrested "four or five times on solid reasons," but was taken in "for the same reasons more than once."
 
 
 8
 At the hearing petitioner produced a series of letters apparently from the regional PPP president. The last letter advised him to leave the country temporarily. However, these letters were all written in English on an English letterhead, and petitioner could produce no envelopes. Similarly, he did not produce an envelope for the purported police record of his April 1985 arrest for disrupting the peace.
 
 
 9
 At the August 1987 continuance of the evidentiary hearing, petitioner filed an affidavit signed by a Chicago friend of his family. The affidavit stated that any person identified as a PPP member was likely to be jailed, that petitioner had participated in the PPP and had been detained and put in prison, and that petitioner's brother had been imprisoned for unspecified reasons but was released through family endeavors. In addition, the affidavit stated that while the affiant was visiting petitioner's family in Pakistan a policeman had come around inquiring about petitioner.
 
 
 10
 On August 21, 1987, the Immigration Judge denied asylum and the withholding of deportation but granted voluntary departure. Asylum was denied on the ground that petitioner had not established an inclination on the part of the Pakistan government to punish him, the final part of a four-part test for well-founded fear established in Matter of Acosta, Int.Dec. 2986 (B.I.A.1985), partially overruled by I.N.S. v. Cardoza-Fonseca, 480 U.S. 421. The Board's commitment to the test was reaffirmed by Matter of Mogharrabi, Int.Dec. 3028 (B.I.A.1987). The Immigration Judge noted that petitioner had been incarcerated for only short periods and had never been charged with a crime, that the regional PPP president (presumably more vulnerable to persecution than petitioner due to his higher position in the PPP) was still engaged in political activities in Pakistan, and that the president had only recommended that petitioner leave the country temporarily, not permanently. The judge also relied upon the State Department's determination that PPP membership was not likely to lead to persecution. Finally, he observed serious discrepancies in petitioner's various statements supporting his claim for asylum. Withholding of deportation was denied on the ground that not having met the standard for asylum, petitioner did not meet the more stringent standard for withholding of deportation enunciated in I.N.S. v. Stevic, 467 U.S. 407, 422, 424.
 
 
 11
 The Board of Immigration Appeals upheld the Immigration Judge's decision and granted petitioner the privilege of voluntary departure. The Board agreed with the Immigration Judge's adverse credibility finding, noting that petitioner had attempted at the hearing to embellish the original accounts of mistreatment contained in his application for asylum. It pointed out the discrepancy between petitioner's stated number of arrests in his original application and the stated number of arrests during oral testimony, and also the discrepancy between petitioner's supposed curtailment of PPP activities following the 1979 arrest and the apparent heightened activities implied by his oral testimony of numerous arrests in the early 1980s.
 
 
 12
 Even though the Board was not satisfied with petitioner's explanations for these discrepancies, like the Immigration Judge it nevertheless considered the merits of the claim. The Board depended on the State Department's account of political conditions in Pakistan and concluded that petitioner had failed to establish a persecutory intent by the police. We affirm the Board's adverse order.
 
 
 13
 As the Supreme Court recently pointed out in INS v. Elias-Zacarias, 112 S.Ct. 812, 817, in order to obtain judicial reversal of the Board's determination an applicant for asylum "must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." Petitioner has clearly not satisfied this test. The Board of Immigration Appeals and the Immigration Judge found that petitioner's testimony at the evidentiary hearing was not credible. This Court must defer to that finding if it is supported by substantial evidence. Berroteran-Melendez v. I.N.S., 955 F.2d 1251, 1256 (9th Cir.1992). Because "a reasonable mind might accept [petitioner's prior inconsistent statements in his original application] as adequate to support [the] conclusion [not to credit his later testimony]," id., we defer to the credibility determination made below. Cf. Carvajal-Munoz v. I.N.S., 743 F.2d 562, 577-79 (7th Cir.1984). When petitioner's claims of numerous arrests and beatings have been discounted the one arrest in 1979, followed by petitioner's curtailing his PPP activities, does not convince us that no reasonable factfinder could fail to find a well-founded fear of persecution. Elias-Zacarias, 112 S.Ct. at 817.
 
 
 14
 This conclusion is bolstered by the State Department's advisory opinion, which detailed conditions in Pakistan tending to support a finding that any fear of persecution by petitioner would not be well-founded. The opinion noted that martial law was suspended by then-President Zia in 1985, military courts were terminated, and all of the suspended parts of the Constitution were restored. Considering the State Department's area of expertise is international affairs, its opinion is entitled to considerable weight. Kaczmarczyk v. I.N.S., 933 F.2d 588, 594 (7th Cir.1991).
 
 
 15
 Because petitioner has not shown a well-founded fear of persecution or that he was the victim of persecution, he is ineligible for asylum. Balazoski v. I.N.S., 932 F.2d 638, 640 (7th Cir.1991). The standard for granting of asylum is more lenient than the standard for withholding of deportation. Id. See also Cardoza-Fonseca, 480 U.S. at 424, 443, 449. Since petitioner has failed to meet the more lenient asylum standard it follows that he is ineligible for withholding of deportation. Balazoski, 932 F.2d at 640.
 
 
 16
 The order of the Board is affirmed, and the petition for review is dismissed.
 
 
 
 *
 Honorable James B. Zagel, United States District Judge for the Northern District of Illinois, Eastern Division, is sitting by designation